UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RAYMOND CHARLES JOHNSON, SR., )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>    Defendant. ) | CAUSE NO. 2:20-cv-00354-SLC |

## OPINION AND ORDER

Plaintiff Raymond Charles Johnson, Sr., appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  FACTUAL AND PROCEDURAL HISTORY

Johnson applied for SSI in April 2018, alleging disability as of April 20, 2009.[1] (ECF 9 Administrative Record ("AR") 15, 190-95). Johnson's claim was denied initially and upon reconsideration. (AR 96-103, 109-11). On November 6, 2019, administrative law judge Luke Woltering ("the ALJ") conducted an administrative hearing at which Johnson, who was represented by counsel, and a vocational expert testified. (AR 35-66). On December 2, 2019, the ALJ rendered an unfavorable decision to Johnson, concluding that he was not disabled because he could perform a significant number of unskilled jobs in the national economy despite

---

[1] Regardless of Johnson's claimed onset date in 2009, SSI is not payable until the month following the month in which a claimant files his SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Johnson could be eligible to receive SSI is May 2018, given that he applied for SSI in April 2018.

the limitations caused by his impairments. (AR 15-28). The Appeals Council denied Johnson's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Johnson filed a complaint with this Court on October 5, 2020, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Johnson alleges that a remand is necessary because the residual functional capacity ("RFC") assigned by the ALJ lacks the support of substantial evidence, in that the ALJ relied on outdated non-examining medical source opinions and failed to develop the record for treating or examining medical source opinions. (ECF 13 at 1).

At the time of the ALJ's decision, Johnson was forty-eight years old (AR 190), had either an eleventh or twelfth grade education (AR 43, 212), and had past relevant work as a construction worker (AR 26, 212, 221-22). In his application, Johnson alleged disability due to high blood pressure, enlarged prostate, a "deteriorating" hip, and tuberculosis. (AR 211).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking SSI must establish that he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed; (2) whether he has a severe impairment; (3) whether his impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. Part 404, Subpart P, App'x 1; (4) whether he is incapable of performing his past

3

relevant work; and (5) whether he is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On December 2, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-28). At step one, the ALJ concluded that Johnson had not engaged in substantial gainful activity after his application date, April 3, 2018. (AR 17). At step two, the ALJ found that Johnson had the following severe impairments: status post total hip arthroplasty and revision on the left, degenerative joint disease of the right hip, and depression. (*Id.*). At step three, the ALJ concluded that Johnson did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 18).

Before proceeding to step four, the ALJ determined that Johnson's symptom testimony was not entirely consistent with the medical evidence and other evidence of record. (AR 21). The ALJ assigned Johnson the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he can stand and walk in combination up to two hours in an

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

4

eight hour workday. He can occasionally push or pull with the left lower extremity. He can occasionally climb ladders, ropes, scaffolds, ramps and stairs, balance, stoop, kneel, crouch, and crawl. Additionally, he can understand, remember, and carry out simple work instructions and can sustain concentration to perform simple, routine, and repetitive tasks. He should have no more than incidental contact with the public. Lastly, the claimant needs a cane for standing and walking.

(AR 19).

The ALJ found at step four that given the foregoing RFC, Johnson could not perform his past relevant work. (AR 26). However, at step five, the ALJ concluded that given Johnson's RFC, age, education, and work experience, he could perform a significant number of unskilled jobs in the national economy, including assembler, sorter, and visual inspector. (AR 27). The ALJ added that these three representative jobs were unskilled, sedentary jobs that allow for use of a cane for ambulation or standing. (*Id.*). Accordingly, Johnson's application for SSI was denied. (AR 27-28).

## C. The Medical Opinion Evidence

Johnson's sole challenge on appeal is that the ALJ improperly assessed the medical opinion evidence. He contends that the ALJ erred by relying on "outdated non-examining opinion evidence" and by "fail[ing] to develop the record for any examining opinion evidence." (ECF 13 at 13). For the following reasons, Johnson's argument is unavailing.

In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2)

5

consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 416.920c(c); *see Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Although the ALJ must consider all of these factors, he need only explain how he considered supportability and consistency." *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) ("[T]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a))).

When assessing the medical source opinions of record, the ALJ stated:

> As for medical opinion(s) and prior administrative medical finding(s), I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. I have fully considered the medical opinions and prior administrative findings as follows: There are no opinions from treating or examining sources concerning any ongoing functional limitations following the claimant's left hip replacement. The comment by a family practitioner that in January 2018, the claimant was no longer able to work covers an issue reserved to the Commissioner. No function-by-function limitations are noted. Further, the claimant had not worked in a decade so it is unclear as to what the doctor is referring. The State agency opinions set forth in Exhibits 1A and 3A are well-supported, well-reasoned and uncontroverted. I find them to be persuasive.

(AR 26). Of course, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [his] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary

6

responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citing 20 C.F.R. § 416.912(c)).

    1. Dr. Madison and Dr. Aquino

James Madison, M.D., a state agency physician, reviewed Johnson's medical record in May 2018 and opined that in an eight-hour workday Johnson could lift ten pounds occasionally and less than ten pounds frequently; stand or walk for two hours; sit for six hours; occasionally balance and climb; frequently stoop, kneel, crouch, and crawl; and had a limited ability to push or pull in his left lower extremity. (AR 74). More recently, Calixto Aquino, M.D., another state agency physician, reviewed Johnson's medical record in February 2019 and opined similarly to Dr. Madison, except that he found Johnson could lift *twenty* pounds occasionally and ten pounds frequently. (AR 87-90).

Johnson failed to produce any medical source opinions dated after his left hip replacement that assigned greater physical limitations than those opined by Dr. Aquino in February 2019.[3] Consequently, it is no surprise that the ALJ found the opinions of the state agency doctors "to be persuasive." (AR 26); *see Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) (affirming the ALJ's reliance on the uncontradicted opinions of the reviewing state agency physicians); *Buckhanon ex rel. J.H. v Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) ("The ALJ expressly relied upon the medical judgment of the state-agency consultants, and their

---

[3] While Johnson did submit a note from a family practice clinic in January 2018 in which the doctor commented that he was "no longer able to work" (AR 21, 330), this note preceded Johnson's left hip replacement in October 2018 (AR 22). Therefore, the ALJ's observation that "[t]here are no opinions from treating or examining sources concerning any ongoing functional limitations following the claimant's left hip replacement" is accurate. (AR 26). And in any event, as the ALJ explained, the family practice doctor's summary comment addresses an issue reserved to the Commissioner, as "[n]o function-by-function limitations are noted." (*Id.*); *see also Clifford*, 227 F.3d at 870 (stating that a claimant "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work,'" as the determination of disability is an issue reserved to the Commissioner); *see also Dixon*, 270 F.3d at 1177; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

uncontradicted opinions constitute substantial evidence . . . ." (citations omitted)); *Luigi B. v. Saul*, No. 18 CV 7392, 2021 WL 83508, at *8 (N.D. Ill. Jan. 11, 2021) (same); *McWilliams v. Berryhill*, No. 15-CV-1588, 2017 WL 1498560, at *11 (N.D. Ill. Apr. 25, 2017) (same) (collecting cases).

Johnson nevertheless challenges the ALJ's reliance on the reviewing state agency doctor opinions when crafting the RFC. First, Johnson contends that the ALJ "proceeded to assess a light RFC, despite the fact that both of the [state agency doctors'] physical opinions found [him] capable of [just] sedentary work . . . ." (ECF 13 at 15). But that is not the case. The lifting limitations opined most recently by Dr. Aquino are consistent with the lifting requirements for light work. *See Clifford*, 227 F.3d at 868 n.2; 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). In any event, the vocational expert testified that the three representative jobs he identified (and which the ALJ relied on at step five)—assembler, sorter, and visual inspector—are all sedentary jobs. (AR 62-63). Therefore, contrary to Johnson's suggestion, the RFC assigned by the ALJ—lifting limitations consistent with light work but reduced by a two-hour standing and walking limitation—is consistent with Dr. Aquino's opinion, the most recent reviewing state agency doctor opinion.

Next, Johnson faults the ALJ for relying on non-examining doctors' opinions, asserting that "the Code directs ALJs to give more weight to the opinion of a source who has examined [claimant] than to the opinion of a source who has not." (ECF 13 at 16 (citations and internal quotation marks omitted)). In making this argument, Johnson cites to 20 C.F.R. § 404.1527(d)(1). (*Id.* at 16-17). But Johnson's claim was filed after March 27, 2017, and thus,

8

20 C.F.R. § 416.920c applies, rather than the prior regulation. *See Havlin v. Saul*, No. 2:19-cv-347-PPS, 2020 WL 4727307, at *4 n.2 (N.D. Ind. Aug. 14, 2020). In any event, as already explained, it is Johnson who bears the primary burden to provide evidence to support his claim of disability. *See Scheck*, 357 F.3d at 702; *Flener ex rel. Flener*, 361 F.3d at 448. Here, Johnson did not produce a medical source opinion from a treating or examining source after his left hip replacement for the ALJ to consider, and thus, there is no relevant medical source opinion from a treating or examining source of record to which the ALJ could have applied more weight.

Johnson also asserts that the ALJ erred in relying on the opinions of state agency doctors because they are "outdated" assessments. (ECF 13 at 16); *see generally Mathias v. Berryhill*, No. 1:18cv260, 2019 WL 1594340, at *16 (N.D. Ind. Apr. 15, 2019) ("The Seventh Circuit has cautioned that ALJs should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." (citing *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018))). More specifically, Johnson contends that "the opinions from non-examining State reviewing physicians Dr. Madison, Dr. Voss, and Dr. Aquino were based upon an incomplete record, rendering them outdated . . . ." (ECF 13 at 17). Given Johnson's left hip replacement in October 2018 and his infection and surgical revision one month later (AR 22-24), Johnson's argument has some merit with respect to Dr. Madison's opinion issued in May 2018. The argument, however, quickly collapses when applied to Dr. Aquino's opinion.

Dr. Aquino reviewed Johnson's medical records in February 2019, *including* the records pertaining to Johnson's hip surgeries and recovery period in late 2018 and early 2019. (*See* AR 89). As the ALJ stated, the medical records from early 2019 reflect that Johnson was "doing

9

well" and "progressing well" though he had some decreased range of motion in his left hip with pain and tenderness due to his recent surgery, and he was ambulating with a cane at the time. (AR 23, 89).

Further, Dr. Aquino's opinion is a recent opinion given that it is dated just ten months before the ALJ issued his decision in December 2019. *See Rust v. Colvin*, No. 2:12-CV-325-PRC, 2013 WL 3935072, at *15 (N.D. Ind. July 30, 2013) (finding the state agency doctors' opinions were not outdated where they "were a little over a year old at the time of the hearing and decision"). Indeed, the Seventh Circuit Court of Appeals "has commented on the difficulty of having a 'complete' record as 'one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on.'" *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) (quoting *Kendrick v. Shalala*, 998 F.2d 455, 456-57 (7th Cir. 1993)). "[H]ow much evidence to gather is a subject on which we generally respect the [Commissioner's] reasoned judgment." *Id*.

Johnson next argues that Dr. Aquino's opinion "could not have accounted for [his] partial improvement but continued tenderness, pain, and limited [range of motion] of the left hip past February 2019, continued use of a cane, right hip tenderness, pain and limited [range of motion], and planning for right hip total replacement." (ECF 13 at 17-18 (citing AR 412-22, 481-83, 498-510, 553-632, 646-805, 920-45, 960-91, 993-94, 1010-28, 1185-96, 1198-1207, 1270-71, 1286-1322, 1361-82)). But much of the evidence Johnson cites is dated *before* Dr. Aquino's review of the record in February 2019. (*See* 412-22 (January 2019), 481-83 (June 2018), 498-510 (August and October 2018), 553-632 (October and November 2018), 646-805 (November 2018), 920-45 (December 2018), 960-91 (January 2019), 993-94 (January 2019), 1010-28 (January 2019)). Dr.

Aquino's opinion reflects that he reviewed the medical evidence through at least January 2019. (AR 89).

As to the medical evidence dated after January 2019, Johnson fails to persuasively show how these records could have changed Dr. Aquino's opinion. These records reflect that Johnson's left hip was "doing well" and that he was just experiencing some pain and tenderness upon getting out of bed in the morning and after walking three to four blocks. (*See, e.g.*, AR 1289, 1305, 1309, 1364). At a medical appointment in July 2019, Johnson did not indicate that he used a cane, nor was a cane observed. (AR 24, 1364, 1367-68). To the extent that Johnson suggests that "planning for right hip total replacement" renders Dr. Aquino's opinion outdated (ECF 13 at 18), that too is unpersuasive. The ALJ considered Johnson's more recent right hip complaints, noting that there was just minimal evidence of record documenting right hip problems. (*See* AR 24, 1186, 1270). Accordingly, the ALJ explained that he was limiting Johnson "to two hours standing/walking, total, in a workday" to account for Johnson's "history of hip replacement and ongoing degenerative changes in the other hip." (AR 24). The ALJ "also included limitations concerning pushing/pulling with the left lower extremity and limitations with respect to postural activities generally." (*Id.*). To reiterate, Johnson—who bears the burden to provide evidence of his disability—fails to produce any medical source opinion dated after his left hip replacement that assigned him greater physical limitations than those in the RFC. *See Scheck*, 357 F.3d at 702; *Flener ex rel. Flener*, 361 F.3d at 448.

Finally, Johnson tries to shift the blame to the ALJ for failing to develop the record to obtain an examining or treating medical source opinion. (ECF 13 at 18-19). Johnson argues that "it was clear from the record that additional opinion evidence was needed from an examining

11

source, as [his] impairments evolved with treatment and deterioration, thereby rendering the non-examining opinions not only less useful because these physicians did not examine [him] themselves, but also because the opinions were outdated." (ECF 13 at 19). But as the Court has reiterated throughout this Order, it is the claimant who bears the burden of producing medical evidence of his disability. This is not a case in which the ALJ owed an unrepresented claimant a "heightened duty to develop the record." *Cf. Paul v. Apfel*, No. 97 C 1224, 1998 WL 26176, at *8 (N.D. Ill. Jan. 15, 1998). Johnson is represented by counsel (*see, e.g.*, AR 35, 107, 184-86, 188-89; ECF 1), and as such, is presumed to have advanced his "best case," *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1998).

Moreover, as already explained, "how much evidence to gather is a subject on which we generally respect the [Commissioner's] reasoned judgment." *Luna*, 22 F.3d at 692; *see also Paul*, 1998 WL 26176, at *8. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are "highly qualified and experts in Social Security disability evaluation." *Anders v. Saul*, No. 20-3429, 2021 WL 2396236, at *4 (7th Cir. June 11, 2021) (citing 20 C.F.R. § 404.1513a(b)(1)). "It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener ex. rel Flener*, 361 F.3d at 448; *see* 20 C.F.R. § 416.20c(c)(5) (including as "other factors" to consider when weighing medical source opinions "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability program's policies and evidentiary requirements").

In sum, none of Johnson's various arguments materially undercut the ALJ's reliance on

the most recent state agency doctor's opinion when assigning the physical RFC.  Ultimately, it is Johnson who failed to carry his burden of producing medical source opinions and other evidence sufficient to support his claim of disability.

   2.  Dr. Voss

In February 2019, David Voss, Ph.D., a state agency psychologist, reviewed Johnson's medical record and found that Johnson was moderately limited in his ability to maintain concentration, persistence, or pace, and in his ability to interact with the general public.  (AR 91). More specifically, Dr. Voss opined:

> The medical evidence, including records from the claimant's own medical source and [activities of daily living], indicates that the claimant can maintain the concentration and persistence necessary to carry out simple tasks in a reasonable punctual fashion and consistent pace in a typical work environment.  He would have no difficulty attending work regularly and would require no special supervision . . . .  Overall, his mental MDI would not interfere significantly with his ability to complete routine work tasks.

(*Id.*).  Ultimately, Dr. Voss concluded:  "[Johnson] retains the mental capacity for work related activities that involve simple instructions and routine/repetitive tasks with limited social demands . . . and within his physical limitations . . . ."  (*Id.*; *see also* AR 87 ("[T]he limitations do not prevent the [clamaint] from performing [substantial gainful activity.")).  Ultimately, the ALJ found Dr. Voss's opinion "persuasive," stating that it was "well supported, well-reasoned and uncontroverted."  (AR 26).

Johnson challenges Dr. Voss's opinion with the same arguments advanced against Dr. Madison and Dr. Aquino.  (ECF 13 at 18).  He contends that the ALJ should not have relied on a non-examining opinion, and failed to develop the record by obtaining a treating or examining medical source opinion.  (*Id.*).  He also asserts that Dr. Voss's opinion was an "outdated

13

assessment," given that the medical record contained just two psychiatry treatment notes in February 2019, and he "continued to treat for his mental impairments of persistent depressive disorder with recurrent major depressive episodes" after Dr. Voss's review. (*Id.*). Johnson contends that despite the documented improvements in his sleep and depressive symptoms after February 2019, he still experienced some "symptomology, [and] his medications were adjusted/increased and added to." (*Id.* (citing AR 1070-176)).

Johnson's arguments are unavailing for the same reasons discussed earlier with respect to Dr. Aquino's opinion. Johnson, who bears the burden to produce evidence of his disability, failed to produce a medical source opinion from a treating or examining mental health provider with more conservative limitations for the ALJ to consider. *See Scheck*, 357 F.3d at 702. Further, Dr. Voss's opinion is dated just ten months before the ALJ's decision in December 2019 and was not an outdated assessment. *See Rust*, 2013 WL 3935072, at *15. Also, Johnson is represented by counsel in this case and is presumed to have advanced his best case. *See Sears*, 840 F.2d at 402.

Moreover, the ALJ expressly considered the mental health evidence dated after February 2019, which revealed that Johnson experienced significant improvement in his sleep and mild improvement overall in his depressive symptoms. (AR 25, 1070-71, 1117-21, 1145-50). Johnson's memory remained intact, and his judgment, concentration, and attention were good. (AR 25, 1070, 1074-75, 1117-21, 1145-50). By July 2019, Johnson denied having depression; denied having medication side effects; and his mood, affect, and behavior were normal. (AR 24-25, 1146, 1367-68). Indeed, Johnson fails to point to any mental health evidence in particular that shows his mental health condition materially declined after February 2019. (*See* ECF 13 at

14

18).  Simply that Johnson continued to treat for his mental impairments or that his medications were regularly adjusted does not constitute "new, significant medical [evidence that] reasonably could have changed the reviewing physician's opinion." *Moreno*, 882 F.3d at 728.

In sum, none of Johnson's arguments materially undermine the ALJ's reliance on the most recent state agency doctors' opinions when assigning the RFC, given that the record is devoid of any relevant treating or examining opinion that contradicts these opinions. Consequently, the Commissioner's final decision is supported by substantial evidence and will be AFFIRMED.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Johnson.

SO ORDERED.

Entered this 18th day of October 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge